**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CARL FANARO,**

      **Petitioner,**

                                  **Case No. 2:10-CV-1002**
    **v.**                                **Judge Frost**
                                          **Magistrate Judge King**

**FRANCISCO PINEDA, WARDEN,**

      **Respondent.**

**ORDER AND
REPORT AND RECOMMENDATION**

Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. *Petition*, Doc. No. 1. The *Petition* alleged that Petitioner is in the custody of the Respondent in violation of the Constitution of the United States on the following grounds: 1) he was denied the effective assistance of trial counsel because his attorney rejected the State's initial plea offer, which would have required a four year term of incarceration, without first consulting with Petitioner regarding the evidence against him or the benefits and risks of accepting or rejecting the offer; 2) he was denied the effective assistance of trial counsel because his attorney rejected the State's subsequent offer, which would have required pleas of guilty to two counts for each victim and restitution, without first consulting with Petitioner and without counseling Petitioner about the strength of the case against him or about the risks of proceeding to trial; 3) he was denied the effective assistance of trial counsel because his attorney failed to counsel Petitioner regarding the

1

advisability of accepting or rejecting the plea offers; 4) he was denied the effective assistance of appellate counsel because his attorney (who was not his trial attorney) failed to notify the Ohio Court of Appeals of the pendency in the Ohio Supreme Court of a case involving Ohio's statute regarding allied offenses of similar import; 5) his sentence violated the Double Jeopardy Clause and; 6) he was sentenced in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542 U.S. 296 (2004).

On May 21, 2012, the Court dismissed Petitioner's claims of ineffective assistance of trial counsel except "Petitioner's claim that he was denied effective assistance of counsel because his attorney failed to properly advise him on whether or not he should proceed to trial and of the potential sentencing ramifications that he faced should he do so." *Opinion and Order*, Doc. No. 40. As to that claim, the Court directed that an evidentiary hearing be held. *Id.* Consideration of Petitioner's remaining habeas corpus claims was deferred pending the evidentiary hearing. *Id.* The evidentiary hearing was held and the parties have submitted post-hearing memoranda.[1] For the reasons that follow, it is **RECOMMENDED** that the petition for a writ of habeas corpus be **DISMISSED.**

## I.    Facts and Procedural History

The facts and procedural history of this case have previously been recounted in detail, *Report and Recommendation,* Doc. No. 28, and will only be summarized here. This case involves Petitioner's

---

[1] On Petitioner's motion, Doc. No. 82, to which Respondent has made partial objection, *see* Doc. No. 83, *Petitioner's Exhibits 1-7, 9, 10A, 10B, 12A, 12B, 13-15, 17* and *19* are **ADMITTED** into the record.

convictions after a jury trial in the Licking County Court of Common Pleas on 99 counts involving the sale of unregistered securities, sale of securities without a license, fraudulent practices in the sale of securities, false representation in the sale of securities, and engaging in a pattern of corrupt activity.[2] Petitioner was sentenced to an aggregate prison term of 19 years plus restitution. On February 21, 2008, the Ohio Fifth District Court of Appeals affirmed Petitioner's convictions and sentence. *State v. Fanaro*, No. 2006CA00168, 2008 WL 555448, at *5-6 (Ohio App. 5th Dist. Feb. 21, 2008). On August 6, 2008, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Fanaro*, 119 Ohio St.3d 1409 (Ohio 2008).

Petitioner thereafter pursued post-conviction relief; however, the state trial court denied the petition without a hearing. On December 4, 2009, the appellate court affirmed that judgment. *State v. Fanaro*, No. 2009CA00066, 2009 WL 4690421, at *1-2 (Ohio App. 5th Dec. 4, 2009). On March 24, 2010, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Fanaro*, 124 Ohio St.3d 1522 (2010).

On July 8, 2008, Petitioner sought reconsideration of the appellate court's February 21, 2008, denial of his direct appeal in view of *State v. Cabrales*, 118 Ohio St.3d 54 (2008) (strict textual

---

[2] Petitioner was charged in a January 2006 indictment with 134 counts involving alleged securities transactions. Shortly before the October 2006 trial, the State moved to dismiss eight counts. *Exhibits 3, 4* to *Return of Writ*. The jury convicted Petitioner on 99 counts but could not reach a unanimous verdict on the remaining 27 counts of receiving stolen property, and those counts were subsequently dismissed. *Exhibits 6, 7* to *Return of Writ*.

comparison of elements of offenses is not required to determine whether convictions constitute allied offenses of similar import). *Exhibit 42* to *Return of Writ*. On May 11, the appellate court denied Petitioner's application for reconsideration. *Exhibit 44* to *Return of Writ*. On September 30, 2009, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *Exhibit 47* to *Return of Writ*.

Petitioner filed an application to reopen his appeal pursuant to Ohio Appellate Rule 26(B), alleging that he had been denied the effective assistance of appellate counsel. *Exhibit 36* to *Return of Writ*. On May 11, 2008, the appellate court denied that application. *Exhibit 38* to *Return of Writ.* The Ohio Supreme Court dismissed Petitioner's subsequent appeal from that denial. *Exhibit 41* to *Return of Writ*.

## II. Ineffective Assistance of Counsel

As noted *supra*, Petitioner alleges that he was denied the effective assistance of trial counsel because his defense attorney, Thomas Tyack, failed to properly advise him on whether or not he should proceed to trial and of the potential sentencing ramifications that he faced should he do so. Petitioner contends that Tyack grossly overestimated the odds of success at trial because he did not understand the law or the evidence against Petitioner and therefore could not properly advise Petitioner on whether it was in his best interest to plead guilty to any of the charges against him. Petitioner also contends that his attorney under-calculated Petitioner's potential sentence should he be convicted at trial. Petitioner claims that, but for the unreasonable advice of his

4

attorney, he would not have proceeded to trial, but would have accepted the State's guilty plea offer(s).

**A.   Facts and Evidentiary Hearing**

A review of the decision of the Ohio Fifth District Court of Appeals affirming the trial court's dismissal of Petitioner's claims of ineffective assistance of trial counsel without an evidentiary hearing will assist in the resolution of Petitioner's claim:

> On January 27, 2006, the Licking County Grand Jury indicted appellant on a total of 134 counts. The indictment included violations of R.C. 1707.44 for the sale of unregistered securities, the sale of securities without a license and false representation in the sale of securities. The indictment also included violations of R.C. 2913.51 for receiving stolen property and one count of engaging in pattern of corrupt activity in violation of R.C. 2923.32(A)(1).
>
> . . .
>
> Appellant was found guilty of having committed 32 fifth degree felonies, 66 third degree felonies and one first degree felony.
>
> . . .
>
> On December 18, 2006, the trial court sentenced appellant to serve six months on each of the 32 fifth degree felonies and further ordered these sentences to run consecutively to each other for a total of 16 years. The trial court also ordered appellant to serve one year on three of the third degree felonies to run consecutively to each other for a total of three years. The trial court further ordered appellant to serve a five year sentence for the first degree felony conviction for engaging in a pattern of corrupt activity. Finally, the trial court ordered the fifth degree (16 year) and third degree felony (3 year) sentences to run consecutively to each other and all other sentences to run concurrently for a total aggregate sentence of 19 years. Appellant was further ordered to pay restitution and the costs of the action. The fines were waived.
>
> Appellant appealed his conviction and sentence in *State v. Fanaro*, 5th App. No.2006CA00168, 2008-Ohio-841. Appellant argued the trial court engaged in judicial fact finding in

sentencing and that the security violations were allied offenses of similar import and should have been merged. Finally, appellant argued the trial court erroneously allowed the introduction of other acts evidence. This Court affirmed the decision of the trial court.

On September 17, 2007, the public defender's office filed a petition to vacate and set aside judgment and sentence pursuant to R.C. 2953.21. On September 19, 2007, the trial court scheduled the petition for "non-oral hearing" for October 17, 2007 at 8:00 A.M pursuant to Loc.R. 5. The State then filed a memorand[um] contra to the petition on September 28, 2007.

On October 10, 2007, prior to the non-oral hearing, the trial court via Judgment Entry denied appellant's petition.

On October 12, 2007, Mr. Pusateri, Appellant's present counsel, entered a notice of appearance and filed a motion for continuance of the non-oral hearing. On October 15, 2007, Appellant's counsel filed a motion for status conference. The State responded with a memorand[um] contra appellant's motion for continuance of non-oral hearing.

On November 9, 2007, Appellant filed a notice of appeal arguing the post-conviction petition was dismissed in advance of the non-oral hearing date assigned in the case. This Court reversed the decision of the trial court, and remanded the matter for further proceedings finding the trial court prematurely ruled on the petition for post-conviction relief.

On December 22, 2008, Appellant filed an amended petition for post-conviction relief in the trial court. Appellee filed a memorandum contra on January 23, 2009. Appellant filed a motion for summary judgment, or in the alternative, motion to conduct discovery on March 12, 2009. Appellee filed a memorandum contra summary judgment on March 23, 2009. The trial court granted summary judgment in favor of Appellee and denied the petition without conducting an evidentiary hearing.

. . .

Appellant maintains counsel was ineffective in rejecting plea offers without consulting petitioner, rejecting plea agreements without adequately investigating the viability of a defense to the charges, and in failing in his duty to counsel Appellant regarding the advisability of accepting or rejecting a plea offer. Specifically, Appellant asserts [that,] had counsel properly instructed him he did not have a viable defense, he would have accepted the State's first

6

plea offer. Further, he alleges counsel summarily rejected two plea offers without consulting him.

On December 22, 2008, Appellant filed his petition for post-conviction relief, attaching ten exhibits, including two letters from his trial counsel, a detailed billing statement of trial counsel, and affidavits supporting his petition.

The State initially offered Appellant a four-year prison sentence, which Appellant maintains his counsel rejected without properly advising him. Second, the State demanded Appellant make restitution in exchange for a guilty plea to two counts for each victim. Appellant asserts his trial counsel summarily rejected the offer without consultation or proper advice. Appellant's only evidence as to the allegations is his own self-serving affidavit.

In response, the State submits an affidavit of trial counsel averring he discussed the first plea offer with Appellant and advised him of the potential penalties. Counsel alleges Appellant summarily rejected the offer because he felt he did not belong in jail. The plea offer also involved restitution, which was unacceptable to Appellant due to his being financially incapable of restitution. Appellant and his wife had filed for bankruptcy in 2004, listing the victims at issue as creditors.

On January 16, 2006, trial counsel sent a letter to the prosecutor indicating the initial plea offer of four years incarceration was not acceptable, but his client could be persuaded to enter an *Alford* plea to some sort of misdemeanor. The letter was copied to Appellant; indicating Appellant had knowledge of the offer and could have discussed the matter with counsel had it been inaccurate. Appellant did not do so.

On October 3, 2006, trial counsel drafted a letter to Appellant indicating the trial was set to commence over a period of four days. In the second letter counsel explains the subsequent offer by the State involving a plea of guilty to two counts on each one of the alleged victims and restitution. Trial counsel informed Appellant he told the prosecutor it was an inferior deal to the first offer, and he was confident Appellant would not accept the offer. Accordingly, the letter contemplates Appellant's ability to inform counsel he would be willing to accept the offer. Again Appellant did not do so.

Further, Appellant's claim [that] counsel was unprepared for trial was not substantiated by the record. Rather, the

record demonstrates a set fee agreement between Appellant and counsel rendering hourly documentation beyond the set fee irrelevant. A review of the record demonstrates counsel properly cross-examined witnesses, and presented witnesses on behalf of Appellant.

Based upon the record and the evidence submitted in support [of] and in opposition to the motion, we conclude the trial court did not err in granting summary judgment in favor of the State without an evidentiary hearing as Appellant has not set forth sufficient operative facts to establish substantive grounds for relief, let alone a reasonable probability Appellant would have accepted the plea in light of his proclaimed opposition to jail and any restitution order.

The judgment of the Licking County Court of Common Pleas is affirmed.

*State v. Fanaro,* 2009 WL 4690421 (Ohio App. 5th Dist. Dec. 4, 2009).

The pertinent facts in this case are the following: In August 2005, the State of Ohio charged Petitioner with 52 felony counts of securities violations involving shares in limited partnerships. After his arrest in Florida, Petitioner retained Tyack, who first met with Petitioner on August 2, 2005. *Affidavit of Thomas Tyack, Petitioner's Exhibit 4,* at ¶ 5. At a pretrial conference held on August 30, 2005, Petitioner was advised by the trial court that he faced a maximum sentence of 260 years' incarceration and a fine of up to $520,000, plus an order of restitution. *Petitioner's Exhibit 2; Transcript, Evidentiary Hearing Vol. 1 ("Evid. Hrg. Transcrpt, Vol. 1"),* Doc. No. 85, *PageID* #4621. On August 31, 2005, Petitioner – who had been detained for 75 days - was released on bond and returned to his home in Florida. *Id.*

Petitioner's wife, Cheryl Fanaro, paid Tyack $25,000. *Id.*, at *PageID* #4675; *Petitioner's Exhibit* 17; It was her understanding that $20,000 represented the attorney's fee and $5,000 was intended to

8

enable Tyack to retain a securities expert. *Id.*, at *PageID* #4672-74. *See also Transcript, Evidentiary Hearing, Vol. 2 ("Evid. Hrg. Transcrpt., Vol. 2"),* Doc. No. 86, *PageID* #4701.

Tyack credibly testified that he reviewed these initial charges with Petitioner and that Petitioner understood the charges against him. *Id.*, at *PageID* #4620. Tyack and Petitioner also discussed Tyack's opinion that, if Petitioner were convicted, "the Judge was going to send him to jail." *Id.*, at *PageID* #4560.

Tyack and the assistant prosecutor then handling the case, David Mallett, discussed in "very general" terms the possibility of a guilty plea in exchange for a sentence of four years and an order of restitution. *Evid. Hrg. Transcript., Vol. 1, PageID* #4621-22. Those discussions did not, however, indicate which of the charges against Petitioner, if any, would be dismissed pursuant to such an agreement. *Id.*, at *PageID* #4622. Tyack presented the offer to Petitioner but, Tyack testified, Petitioner was "adamant" that he would not plead guilty to a felony offense, did not want to serve any additional time in jail or prison, and had no money with which to pay restitution. *Id.*, at *PageID* #4623-24. Moreover, Petitioner had previously initiated a bankruptcy proceeding and had listed all of the alleged victims as creditors. *Id.*, at *PageID* #4624.

The Court credits Tyack's testimony that it was Petitioner's decision to reject this plea offer. However, Tyack persuaded Petitioner to make a counter proposal specifying the terms on which Petitioner would agree to enter a guilty plea. *Id.*, at *PageID* #4624-

25.  Tyack conveyed that counter proposal to Mallett in a letter dated January 16, 2006, which was copied to Petitioner:

> In follow up to our telephone conversation of Friday, January 13, this will confirm my response to your offer of a felony plea for four (4) years incarceration.  That is not acceptable.  My client could be persuaded to enter an *Alford* plea to some sort of misdemeanor for the seventy-five (75) days he spent in jail before he was transferred up to Ohio.

*Petitioner's Exhibit 6*. Although Tyack expected further discussions with Mallett, *Evid. Hrg. Transcrpt.*, *Vol. 1*, *PageID* #4614-15, 4642, Mallett made no response to Petitioner's counter offer. *Id., at PageID* # 4625.[3]

The State dismissed the 2005 case shortly thereafter. In a separate indictment filed just days after the Mallett proposal, Petitioner was charged with 134 felony counts involving securities violations.[4] The Office of the Ohio Attorney General, represented by its chief legal counsel Carol O'Brien, assumed prosecution of the case.  *Id.*, at *PageID* #4625-28; *Petitioner's Exhibit* 7. Briefly, the State's case against Petitioner required proof that Petitioner sold securities.  Certain charges required that the securities were neither registered with the Ohio Division of Securities nor exempt from registration; other charges required evidence that Petitioner was not

---

[3] According to Petitioner, he and Tyack discussed Mallett's plea offer only by telephone and only after Tyack had rejected the offer. *Evid. Hrg. Transcrpt., Vol. 2, PageID* #4694-95. Tyack dismissed the offer and the strength of the State's case against Petitioner: "'Fuck them.  They don't have a case.  We will get a better deal.'" *Id.*, at PageID #4695.  Petitioner also testified that there was no discussion of a counter offer. *Id.*  As noted, the Court credits Tyack's testimony over that of Petitioner in this regard.

[4]  Throughout these proceedings, the parties refer to the 2006 indictment as both a superseding indictment and a new case.

licensed by the Ohio Division of Securities, or that Petitioner made false representations or omissions in connection with the sales. *See Petitioner's Exhibit* 9. As previously noted, Petitioner was also charged with one count of engaging in a pattern of corrupt activity and 27 counts of receipt of stolen property.

O'Brien contacted Tyack by letter dated September 25, 2006, and proposed the following offer, which remained open until the close of business on October 3, 2006:

> Mr. Fanaro would plead guilty to two counts for each transaction for each victim[. T]he counts would include the sale of securities with no license and the false representation in the sale of securities for all but Alice Catanzaro, Lorraine Rataczak, Connison Wilson, Thomas Kerr, Keith and Mary Emmons and Marilyn Loucks. For the above named victims Mr. Fanaro would plead guilty to the sale of securities without a license and selling unregistered securities. Mr. Fanaro would make restitution to the victims. In terms of the sentencing, the State would present their case to the Judge and leave the ultimate decision to him.

*Petitioner's Exhibit 7. See also Evid. Hrg. Transcrpt, Vol. 1, PageID* #4627-28. Tyack wrote Petitioner a letter on October 3, 2006, summarizing the terms of O'Brien's plea offer and the likelihood of trial. *Id.,* at *PageID* #4628-29. Tyack heard no response from Petitioner.

It was Tyack's understanding that Petitioner had no money with which to make restitution. *Id.,* at *PageID* #4630. "So, phase one of the agreement was, therefore, impossible for him to perform." *Id.,* at *PageID* #4613-14. "I know we talked about the fact to even get that plea agreement, we had to come up with the money on restitution. That we couldn't do. Impossible to do." *Id.,* at *PageID* #4616. Petitioner testified that Tyack never discussed the issue of restitution with

him.  *Evid. Hrg. Transcrpt., Vol. 2, PageID* #4707.  Petitioner could have raised funds for payment of restitution as part of a plea agreement.  *Id*.  However, Petitioner acknowledged that he could not have raised $600,000 for restitution.  *Id., at PageID* #4713.[5]

According to Tyack, O'Brien's offer was also unacceptable because Petitioner did not want to serve additional time in jail or prison and did not want a felony conviction on his record: "Carl felt he shouldn't do any more time in jail. He was working to try to get back into the business, and he felt that a felony conviction would keep him from getting relicensed. . . ."  *Evid. Hrg. Transcrpt., Vol. 1, PageID* #4615. Moreover, because O'Brien's offer required pleas of guilty to some of the fraud, or misrepresentation, counts, Tyack believed that the trial judge "probably would impose greater sentences than if it was something on the lower level offenses."  *Id., at PageID* #4558.

> . . . [T]here is no doubt in my mind, if she wants two counts, including the fraud count for each of the alleged victims, depending upon how you count.  If you count a husband and wife as two victims or one, but depending how you do it, but you are talking somewhere in the neighbor[hood] of 40 counts, including 20 fraud counts. And given that circumstance, there is no way that [the trial judge], under those circumstances, is going to give him a concurrent minimum sentence on the, you know, on the less serious – based on the less serious offenses.
>
> . . .
>
> My suspicion is, given the publicity that had gone on, I don't see why it would have come out much different, to be honest with you, maybe a little bit less serious.

*Id*., at *PageID* #4558-59.  At bottom, Tyack did not regard O'Brien's offer as meaningful:  "[I]n reality, that [proceeding to trial] was

---

[5] Indeed, Petitioner has paid no restitution to date.  *Evid. Hrg. Transcrpt., Vol. 2, PageID* #4714.

the only thing that could be done because their suggestion was impossible and probably would have resulted in him going to jail for a long, long time anyway." *Id.*, at *PageID* #4617.

Petitioner testified that he first learned of O'Brien's proposal when he received Tyack's October 3, 2006 letter to Petitioner. *Evid. Hrg. Transcrpt., Vol. 2, PageID* 4696-97. By that time, however, the offer had expired. *Id.*

During the course of trial preparation, Tyack reviewed discovery materials. *Evid. Hrg. Transcrpt., Vol. 1, PageID* #4517-23. His trial strategy[6] included, *inter alia*, the proposition that Petitioner had not engaged in the sale of securities:

> [Tyack]: In this particular situation, since [Petitioner] was receiving no compensation, he had no ownership and so forth, the question was he actually doing a sale in the classic situation, or was he simply making an opportunity available to his people, to deal with – or to buy into that situation with the Mayes' LLC. An argument could be made that he was really introducing these people, he wasn't selling. The argument could be made.

*Evid. Hrg. Transcrpt., Vol. 1, PageID* #4571.

> [Tyack]: I think that he provided the people an opportunity. He gave them the documents created by the LLCs. And if I remember on most occasions, actually, the money and so forth was sent directly to Mayes, it didn't go through Carl.
> Q.[Petitioner's Attorney]: Again, does that mean that you believe that there was not sale?
> A.: No, I didn't say that.
> Q.: Did you argue that?

---

[6] To be clear, Petitioner does not raise in these proceedings a claim of ineffective assistance of counsel at trial. The Court receives evidence relating to Tyack's trial strategy and conduct during trial only as evidence relevant to petitioner's claim that, because Tyack did not understand the elements of the charges against petitioner, he did not competently counsel Petitioner on whether or not to accept the State's plea offers. In particular, the Court disregards any suggestion that Tyack misapplied any portion of the funds paid to him, except as such allegation may relate to the claims actually before the Court.

> A.:  I don't believe we argued that.  There was a sale, but
> the question was, was the sale directly between them and
> the LLC, rather than through Carl.

*Id.*, at *PageID* #4576-77.  *See also id.*, at *PageID* #4524("[Petitioner] received no commission. He was provided the materials, including the documents that these people filled out from the prospectus, and they were sent to the people who were running the LLCs."); *id.*, at *PageID* #4565 (The sale of shares in the LLCs "was a component on the edge of what his primary function was, which was selling the insurance annuities.").

Tyack also wanted to convince the jury that Petitioner had done his "due diligence:"

> [Tyack]:  .  .  .  [I]f you are doing certain types of
> activities, if you undertake to do due diligence, if you
> turn out to be wrong, you are not necessarily liable
> civilly or, perhaps, criminally, depending on the
> circumstances.

*Id.,* at *PageID* #4565.

Tyack also took the position that the securities at issue were exempt from registration with the Ohio Division of Securities, which was an issue of fact for determination by the jury.  *Id.*, at *PageID* #4565-66. Tyack consulted on this issue with Dwight Hurd, a securities lawyer,[7] and the Florida resident who had prepared the prospectus relating to the securities. *Evid. Hrg. Transcrpt., Vol. 1, PageID* #4539, 4561-62.  Tyack ultimately decided not to use their testimony at trial:

---

[7] *Petitioner's Reply to Respondent's Post-Hearing Brief*, *PageID* #4823, attempts to refute Tyack's testimony in this regard by referring to "Pet. Ex. 16, Hurd Letter."  No such exhibit was referred to at the evidentiary hearing, *see Witness & Exhibit List*, attached to *Minute Entry*, Doc. No 79, nor does Petitioner's *Motion to Admit Petitioner's Exhibits from Evidentiary Hearing*, Doc. No. 82, refer to such an exhibit.

> Q. . . . [I]t would have been risky to use an expert because an expert could not say that these were exempt securities.  The best that an expert could do is say maybe they are or maybe they aren't;  is that your testimony?
>
> A. Yes.

*Id.,* at *PageID* #4542-43.

Tyack testified at the evidentiary hearing that he "doubt[ed]" that he consulted with Petitioner about his strategic decision not to retain an expert.  *Id.* at *PageID* #4600.  Petitioner testified that he could have raised additional funds with which to hire an expert. *Evid. Hrg. Transcrpt., Vol. 2, PageID* #4705. Cheryl Fanaro testified that her sons could have raised more money for Petitioner's defense, had they been asked to do so, and she could have sold certain real property, which had been left to her by her father and which was worth $100,000.  *Evid. Hrg. Transcrpt., Vol. 1*, *PageID* #4675-77. Petitioner knew that Tyack had consulted Hurd, but he believed that Hurd was acting as his attorney along with Tyack.  *Evid. Hrg. Transcrpt., Vol. 2, PageID* #4702-03.[8]

Tyack testified at the evidentiary hearing, erroneously, that the sale of a security that is exempt from registration does not violate Ohio law even if the seller is unlicensed.[9]  *Evid. Hrg. Transcrpt.,*

---

[8]Instead of calling an expert on the issue of exemption, Tyack called Petitioner to testify on that and other topics.  *Evid. Hrg. Transcrpt., Vol. 1, PageID* #4564.  During the course of his testimony at trial, damaging information was elicited, including Petitioner's admission that he had misrepresented his credentials in his résumé, which had been provided to investors.  *Evid. Hrg. Transcrpt., Vol. 2, PageID* #4716-17.  However, there is no evidence that Petitioner had advised Tyack prior to trial of those misrepresentations, nor did he tell Tyack prior to trial that his Florida securities license had been suspended. *Id.*, at *PageID* #4718.

[9]"Q. . . . If I am selling a security that is exempt, but I do not have a license;  am I committing a crime?
A.    Under the Ohio Revised Code, I don't think so."  *Evid. Hrg. Transcrpt.,*

*Vol. 1, PageID* #4547, 4578. *But see* O.R.C. § 1707.44(A)(1). Petitioner acknowledged that he had no license to sell securities at the time of the transactions addressed in the prosecution. He testified that he did not learn until after the trial that a license was required. *Evid. Hrg. Transcrpt., Vol. 2, PageID* #4691.[10] "There was never a discussion with Mr. Tyack about me not being innocent. I didn't need a license, and the securities were exempt." *Id.* at *PageID* #4708.

Tyack believed that "there was [a] slightly better than a 50-50 chance of winning this trial." *Evid. Hrg. Transcript., Vol. 1, PageID* #4547. Cheryl Fanaro did not attend Petitioner's trial based on Tyack's assurance that Petitioner would be returning home immediately upon completion of trial proceedings. *Id., at PageID* #4678. Nevertheless, Petitioner understood that he could be convicted on the charges. *Id.*, at *PageID* #4625. Tyack also told Petitioner that he could make a strong argument that any sentence should be "minimum concurrent." *Id.*, at *PageID* #4548. However, he also advised Petitioner that the trial judge "can do anything to you that he wants within the statutory range." *Id.*, at *PageID* #4552. Although Petitioner testified that Tyack never discussed the sentencing ramifications of proceeding to trial, it is clear that Petitioner knew that he faced a possible maximum sentence of hundreds of years: "The number of 300 years and a million dollar fine are just so – I probably

---

*Vol. 1, PageID* # 4547.

[10] However, Petitioner also testified that, as early as November 2005, he had information "[w]hich suggested that one needed a license to sell these securities." *Evid. Hrg. Transcrpt., Vol. 2, PageID* #4692. Petitioner assumed, however, that Tyack and Hurd had concluded that this information "wasn't relevant to my particular situation." *Id., at PageID* #4693.

didn't pay that much attention to that." *Evid. Hrg. Transcrpt., Vol. 2, PageID* #4703-04.   According to Petitioner, Tyack also never discussed the concept of judicial release, *id.* at *PageID* #4697, which could have rendered Petitioner eligible for consideration for early release.[11]

The matter proceeded to trial. As noted, the jury convicted Petitioner on 99 of the 134 counts with which Petitioner was charged in the 2006 indictment.   The trial judge sentenced Petitioner to 6 months in prison on 32 counts, to be served consecutively with each other, 1 year on 3 other counts, to be served consecutively with each other and with the 32 counts, to 1 year in prison on 63 additional counts, to be served concurrently with all other counts, and to 5 years in prison on the corrupt activity count, to be served concurrently with all other counts – for an aggregate term of 19 years in prison.   However, the terms of O'Brien's plea offer, which left any actual sentence to the trial judge, did not guarantee a shorter sentence.   Indeed, the trial court could have sentenced Petitioner to "significantly more time" had Petitioner accepted O'Brien's offer. *Evid. Hrg. Transcrpt., Vol. 1, PageID* #4629.

Petitioner acknowledged that he did not direct Tyack to accept either plea offer.   *Evid. Hrg. Transcrpt., Vol. 2, PageID* #4712-13. He testified that, had he been advised by Tyack of the controlling law

---

[11] According to Petitioner, a sentence of 4 years would have rendered him eligible for release after 180 days, *Evid. Hrg. Transcrpt., Vol. 2*, at *PageID* #4697-98, and a sentence of less than 10 years would have rendered him eligible for release after 5 years.   *Id.*, at *PageID* # 4698.   *See* O.R.C. § 2929.20.   The statute also provides that, if the aggregate sentence is more than 10 years, the offender is eligible for judicial release upon the later of ½ the stated prison term or 5 years.   O.R.C. § 2929.20(C)(5). Tyack was not asked at the evidentiary hearing about judicial release.

and of the substance of the State's case, however, he would have accepted Mallett's or O'Brien's proposal. *Id.*, at *PageID* #4696. There would have been "no alternative but to make a plea because there would have been no defense." *Id.,* at *PageID* #4697.

**B.  Discussion**

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. To establish the second prong of the *Strickland* test, *i.e.,* prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*.

Because Petitioner must satisfy both prongs of *Strickland* to demonstrate ineffective assistance of counsel, should a court determine that a petitioner has failed to satisfy one prong, it need not consider the other. *Id.* at 697.

A criminal defendant is entitled to the effective assistance of counsel during the plea negotiation process. *Lafler v. Cooper*, ---U.S. ----, 132 S.Ct. 1376 (2012).

> Having to stand trial, not choosing to waive it, is the prejudice alleged.  In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

*Id.* at 1385.  The United States Court of Appeals for the Sixth Circuit has described the obligations of defense counsel as it relates to advice during the plea negotiation stage:

> A criminal defendant has a right to expect at least that his attorney will review the charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available

*Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003) (citing *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992)).

"[A]s a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Missouri v. Frye*, -- U.S. --, 132 S.Ct. 1399, 1408 (2012).  The failure to do

so prior to the expiration of the terms of the offer is constitutionally unreasonable. *Id*. However, a petitioner who later complains of a lost plea bargain must also establish prejudice.

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it . . . .

*Id*. at 1409. In this regard, a petitioner must show that, "if the prosecution had the discretion to cancel [the plea offer], or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented." *Id*. at 1410.

A substantial disparity between a plea offer and the potential sentence is strong evidence of a reasonable probability that a properly advised defendant would have accepted the plea offer. *Smith*, 348 F.3d at 552 (evidentiary hearing warranted as to whether defendant would have pleaded guilty where attorney failed to convey plea offer of five years and defendant sentenced to 156 months) (citing *Magana v. Hofbauer*, 263 F.3d 542, 552–53 (6th Cir. 2001) (difference between ten and twenty year sentence significant); *United States v. Gordon*, 156 F.3d 376, 377–81 (2d Cir. 1998) (disparity between 10 year sentence in plea offer and 17 ½ years the defendant received was objective evidence that a plea would have been accepted)). However, an attorney's failure to insist that his client accept a plea offer due

to overwhelming evidence of guilt does not constitute constitutionally ineffective assistance.

> The decision to plead guilty — first, last, and always — rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction.

*Id.*

In the case presently before the Court, Petitioner contends that his attorney performed in a constitutionally ineffective manner because Tyack did not properly advise Petitioner in connection with the plea offers. This failure, Petitioner argues, was a consequence of Tyack's failure to understand the governing securities laws and Petitioner's potential sentence exposure. This misapprehension was evidenced, in Petitioner's view, by the counter offer to Mallett of a plea to a misdemeanor, which Petitioner characterizes as unreasonable in light of the presumption under Ohio law that Petitioner knew or should have known all facts relevant to the sales of securities, including whether the securities were exempt from the registration requirement. *Post-Hearing Brief of Petitioner Carl Fanaro*, Doc. No. 91, pp. 10-11 (citing O.R.C. § 1707.29). Petitioner argues that Tyack should have known that Petitioner could not carry this burden because Tyack was unable to locate an expert willing to testify that the securities at issue were exempt. *Id.*, at pp. 11-13. Petitioner also complains that Tyack failed to conduct adequate research and was "reckless" in advising Petitioner to proceed to trial in the absence of a defense expert on securities law. *Id.*, at pp. 12-13. He also

21

argues that Tyack did not understand that Petitioner must have secured a license prior to selling securities, regardless of whether the securities were exempt from registration, *id.*, at p. 13 (citing O.R.C. § 1707.02), and suggests that Tyack did not understand the elements of the offenses charged. *Petitioner's Reply to Respondent's Post-Hearing Brief*, Doc. No. 93, p. 18.

Petitioner takes the position that his chance of winning at trial was "essentially zero" and that Tyack – who believed that Petitioner's chance of winning at trial was "slightly better than . . . 50-50, *Evid. Hrg. Transcrpt., Vol. 1, PageID* #4547 - was therefore incompetent in advising Petitioner to reject the plea offers. *Post-Hearing Brief of Petitioner Carl Fanaro*, p. 13.

Finally, Petitioner contends that Tyack failed to understand the "extreme sentencing exposure" that Petitioner faced, as evidenced by Tyack's testimony at the evidentiary hearing that Petitioner faced a maximum term of 377 years' imprisonment when in fact he actually faced up to 678 years in prison.[12] *Id.* at p. 14.

To summarize, Petitioner contends that competent counsel would have advised Petitioner to accept either of the State's proposals. This Court is not persuaded that Petitioner has met his burden on this claim.

---

[12]The parties disagree on the actual maximum term of imprisonment faced by Petitioner. *Compare Post-Hearing Brief of Petitioner Carl Fanaro*, p. 14 (678 years) *with Respondent's Post Hearing Brief*, Doc. No. 90, p. 2 (377 years). The trial court calculated the maximum sentence, at the time of sentencing, at 377 years. *State v. Fanaro*, 2008 WL 555448, *2. Regardless, it is clear that Petitioner knew that he faced a maximum possible sentence of hundreds of years in prison and it is undisputed that the imposition of the maximum sentence, however calculated, would effectively have been a life sentence for Petitioner.

The record simply does not support Petitioner's argument that his attorney's telephone conversation with Mallett resulted in a formal plea offer. The offer was never reduced to writing and the parties never discussed which, if any, of the charges pending against Petitioner would be dismissed should Petitioner plead guilty and agree to a sentence of four years' imprisonment and an order of restitution in some unspecified amount.

In any event, the credible evidence establishes, in the Court's view, that Tyack informed Petitioner of Mallett's offer and that it was Petitioner's decision to reject that offer because it would have required a felony conviction, service of a term of imprisonment and an order of restitution, all of which Petitioner adamantly opposed.

Unlike the Mallett offer, the offer extended on September 25, 2006 by Carol O'Brien of the Office of the Ohio Attorney General, *Petitioner's Exhibit* 7, was a formal offer as contemplated by *Missouri v. Frye*: her offer was made in writing, articulated the counts to which Petitioner would be required to plead guilty, and explicitly remained open "until the close of business Tuesday October 3, 20006." *Id*. Tyack, assuming that Petitioner would reject the offer, informed Petitioner of this offer in a letter dated the same day that the offer expired but which was received by Petitioner approximately seven days later. *Evid. Hrg. Transcrpt., Vol. 2,* PageID #4696. There is no evidence that Tyack communicated O'Brien's plea offer to Petitioner prior to its expiration. *See Missouri v. Frye*, 132 S.Ct. at 1409.

Petitioner complains that defense counsel failed to properly advise him of the strength of the case against him. In this regard,

Petitioner focuses on the issues of exemption of the securities and the licensing requirement, arguing that Tyack should have known that he could not establish an exemption in the absence of expert testimony and that the licensing requirement was independent of the issue of exemption. As a consequence, Petitioner argues, he should have been advised that he had virtually no chance of success at trial.

As an initial matter, the Court notes that the issues of exemption and licensing were relevant to only certain charges. Moreover, one of the positions taken by Tyack at trial was that Petitioner had not engaged in a sale of securities, a position which, if accepted, could have offered a defense to most if not all charges. Finally, although Tyack ultimately decided not to call an expert to testify on the issue of exemption of the securities, that decision was based on the fact that the "best that an expert could do is say maybe they [*i.e.*, the securities] are or maybe they aren't" exempt from the registration requirement. *Evid. Hrg. Transcrpt., Vol. 1, PageID #* 4542-43.

As noted, Petitioner also complains that his trial counsel failed to accurately advise Petitioner of the potential sentence faced by Petitioner should he be convicted at trial. However, Petitioner's own testimony establishes that he knew that he faced a potential sentence of hundreds of years. *Evid. Hrg. Transcrpt., Vol. 2, PageID* #4703-04. The Court credits Tyack's testimony that he advised Petitioner that

the trial judge "can do anything to you that he wants within the statutory range." *Evid. Hrg. Transcrpt., Vol. 1, PageID* # 4552.[13]

Despite Tyack's failure to convey O'Brien's offer to Petitioner prior to the lapse of that offer, and despite Tyack's apparent misapprehension of the licensing requirement underlying certain of the charges pending against Petitioner, and even if Tyack did not discuss the concept of judicial release with Petitioner, the Court is also not persuaded that Petitioner has established prejudice by reason of the rejection of either proposal. As noted *supra*, in order to prevail on his claim in this regard, Petitioner must demonstrate a reasonable probability that a plea offer would have been accepted by Petitioner, that the prosecution would not have withdrawn it in view of intervening circumstances, that the trial court would have accepted the agreement, and that the outcome would have been less severe than the judgment and sentence actually imposed. *See Lafler*, 132 S.Ct. at 1384.

Even assuming, arguendo, that Mallett's offer was a formal offer within the meaning of *Missouri v. Frye*, the Court concludes that Petitioner has not established his claim as it relates to that offer. On January 27, 2006, *i.e.*, 11 days after Petitioner's counter offer

---

[13] Petitioner complains that Tyack mischaracterized, in connection with Petitioner's sentence, the decision of the Ohio Supreme Court in *Foster v. State of Ohio*, 109 Ohio St. 3d 1 (2006), which was issued shortly after the return of the 2006 indictment and which addressed sentencing by Ohio courts in light of *Apprendi* and *Blakely*. In light of the fact that Petitioner knew that he faced a maximum possible sentence of hundreds of years in prison and Tyack's credible testimony that he advised Petitioner that the trial judge "can do anything to you that he wants within the statutory range," *Evid. Hrg. Transcrpt., Vol. 1, PageID* # 4552, the fact that Tyack may have mischaracterized the ultimate impact of *Foster* is of no moment. Similarly, the fact that Tyack was ultimately unsuccessful in arguing that Petitioner's sentence should be "minimum concurrent" is likewise not determinative.

"to enter an *Alford* plea to some sort of misdemeanor for the seventy-five days he spent in jail before he was transferred up to Ohio," *Petitioner's Exhibit* 6, a new case was filed against Petitioner. That new case included all of the original 52 charges filed against Petitioner and added new charges for a total of 134 counts. The Office of the Ohio Attorney General, which had assumed responsibility for the prosecution of the new case, refused to discuss a recommended sentence because "they were pushing for maximum jail time." *Evid. Hrg. Transcrpt., Vol. 1, PageID* #4628. Tyack testified that the counter offer proposed by him was intended to be merely a stage in on-going negotiations. *Id.*, at *PageID* #4614. The fact that he received no response to that counter offer suggests that the prosecution was not interested in pursuing negotiations along the lines of Mallett's offer.

Petitioner argues that Mallett's plea offer would not have been withdrawn and that the new indictment and the appearance of a new prosecutor did not constitute intervening circumstances because all parties were aware, at the time Mallett's proposal was made, that a criminal investigation into Petitioner's activities was on-going and that additional charges were likely. It is true that Tyack knew as early as August 2005 that the investigation was continuing. *Evid. Hrg. Transcrpt., Vol. 1, PageID* #4643. However, there is no evidence that Mallett's proposal was made with the approval of the Office of the Ohio Attorney General. To the contrary, the fact that additional victims had been located and numerous additional felony charges were added to the prosecution undermines the likelihood that Mallett's plea

offer remained viable.  Similarly, there is no evidence whatsoever that the trial court would have agreed to a sentence of four years notwithstanding the quantity and seriousness of the charges against Petitioner.  In short, Petitioner has failed to establish that he was prejudiced by his counsel's performance in connection with Mallett's plea offer.

The Court also concludes that Petitioner has failed to establish prejudice by reason of any failure on his counsel's part in connection with O'Brien's offer.  The Court specifically finds unworthy of credit Petitioner's testimony that he would have accepted O'Brien's plea offer but for the ineffective assistance of his counsel.  Rather, the Court credits the testimony of Tyack regarding his discussions with Petitioner and his conduct during plea negotiations.  More specifically, the Court finds credible Tyack's testimony that Petitioner was adamant in his refusal to consider any plea offer that resulted in a felony conviction or required the payment of restitution or an additional period of incarceration.  The Court therefore expressly finds that Petitioner would not have accepted O'Brien's plea offer even had he been informed of the offer prior to its expiration.

The Court accords great credit to Tyack's testimony. Petitioner's testimony was discredited by his general inability to recall nearly every aspect of the circumstances surrounding his prosecution, except those matters supportive of his claims.  For example, Petitioner could not recall the substance of his discussions with Tyack during their meetings.  *Evid. Hrg. Transcript., Vol. 2, PageID* #4708-10.  In particular, Petitioner could not recall if Tyack

27

reviewed the charges, the defenses to the charges, *id.*, at *PageID* #4709, or the maximum penalties, *id.*, at *PageID* #4710.  He also could not recall the return of the 2006 indictment. *Id.*, at *PageID* #4711.  Petitioner could not recall whether he discussed O'Brien's plea offer with Tyack.  *Id.*, at *PageID* #4712-13.  Petitioner expressly denied being present for the selection of the jury at his criminal trial, *id.*, at *PageID* #4715, and yet the trial transcript indicates that Petitioner was seated with Tyack at counsel table at that time. *Transcript, Jury Trial, Vol. 1*, Doc. No. 27-3, *PageID* #1501. Moreover, had Petitioner pled guilty pursuant to O'Brien's plea offer, the trial court could have imposed the same - or an even greater - sentence as that actually imposed.  The Court therefore declines to credit Petitioner's allegation that he would have accepted O'Brien's plea offer had he been advised of the offer in a timely fashion and had he been properly advised by his counsel of the strength of the case against him and his sentence exposure.

In short, Petitioner has failed to establish the ineffective assistance of his trial counsel.

## III. Claim Four

In claim four, Petitioner asserts that he was denied the effective assistance of appellate counsel (who was not Petitioner's trial counsel) because his attorney failed to notify the state appellate court of the Ohio Supreme Court's pending consideration of Ohio's statute on allied offenses of similar import, O.R.C. § 2941.25.

*See State v. Cabrales*, 118 Ohio St.3d 54 (2008).[14]  Appellate counsel argued on appeal that Petitioner's sentences should have been merged because all charges upon which Petitioner was convicted were a "part of the same course of conduct." *Exhibit 12* to *Return of Writ*, *PageID* #498.  Petitioner asserts, however, that his appellate attorney performed in a constitutionally ineffective manner by failing to request a stay of proceedings pending decision by the Ohio Supreme Court in *Cabrales* and that, had counsel done so, Petitioner's argument that the trial court improperly failed to merge his sentences would have prevailed and his sentence would have thereby been reduced.

The *Strickland* test for evaluating claims of ineffective assistance of counsel also applies to appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Burger v. Kemp*, 483 U.S. 776 (1987).  The failure to raise an issue on appeal can amount to ineffective assistance. *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004) (citing *Joshua v. Dewitt*, 341 F.3d 430, 441 (6th Cir. 2003); *Lucas v. O'Dea*, 179 F.3d 412, 419 (6th Cir. 1999); *Mapes v. Coyle*, 171 F.3d 408, 427–29 (6th Cir. 1999)). Where a petitioner complains that appellate counsel improperly failed to assert a claim on appeal, a court must assess the strength of the claim that counsel failed to assert. *Henness v. Bagley*, 644 F.3d 308 (6th Cir. 2011) (citing *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008)).  "Counsel's

---

[14] *Cabrales* "clarified" *State v. Rance*, 85 Ohio St. 3d 632 (1999), and held that Ohio courts considering whether offenses are allied offenses of similar import are "not required to find an exact alignment of the elements" of the offenses. "Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import." *Cabrales,* at syllabus 1.

failure to raise an issue on appeal amounts to ineffective assistance only if a reasonable probability exists that inclusion of the issue would have changed the result of the appeal." *Id.* (citing *Wilson*, 515 F.3d at 707).

The state appellate court rejected Petitioner's claim on direct appeal that his sentences violated Ohio's statute on allied offenses of similar import.[15]

> In comparing the statutes, R.C.1707.44(A)(1) prohibits the sale of securities by an unlicensed person, R.C. 1707.44(C)(1) prohibits the sale of unregistered securities, R.C.1707.44(B)(4) prohibits affirmative misrepresentations in the sale of securities, R.C. 1707.44(G) prohibits both affirmative misrepresentations and fraudulent non-disclosures in the sale of securities (*i.e.* material omissions) FN4 and, R.C 2923.32(A)(1) prohibits a pattern of conduct in the unlawful sale of securities. Pursuant to the threshold analysis under [*State v.*] *Rance,* [85 Ohio St. 3d 632 (1999)] we find that, in an abstract comparison, these security violations and the charge of engaging in a pattern of corrupt activity do not correspond to such a degree that the commission of one crime will necessarily result in the commission of the other. Therefore, we find that the charges are not allied offenses of similar import.

> FN4. "R.C. 1707.44(G) prohibits not only affirmative misrepresentation, but also fraudulent non-disclosure where there is a duty to disclose." *State v. Warner* (1990), 55 Ohio St.3d 31, 564 N.E.2d 18. *See also*, R.C. 1707.01(J) for the definition of "fraud."

*State v. Fanaro*, 2008 WL 555448, at *4.

---

[15] Petitioner abandoned this claim on appeal to the Ohio Supreme Court. However, he now argues that the claim was meritorious in light of the Ohio Supreme Court's April 8, 2008 decision in *Cabrales*, which was issued four months prior to the Ohio Supreme Court's August 6, 2008 dismissal of Petitioner's direct appeal. Petitioner filed his notice of appeal on April 7, 2008*, Exhibit 14* to *Return of Writ*, *i.e.,* one day before the Ohio Supreme Court issued its decision in *Cabrales,* raising as his single proposition of law a claim that the trial judge had engaged in unconstitutional judicial fact-finding in sentencing Petitioner. *Exhibit 15 to Return of Writ*.

The state appellate court rejected that same claim in Petitioner's Rule 26(A) motion for reconsideration:

> This matter is before the Court for consideration of appellant Carl Fanaro's motion for reconsideration pursuant to App. R. 26(A). In the motion, appellant argues that we should reconsider our opinion on direct appeal because several of appellant's convictions for securities violations are allied offenses of similar import under the Supreme Court's decision in *State v. Cabrales*, 118 Ohio St.3d 54 . . . decided after this Court issued its opinion on direct appeal.
>
> . . .
>
> Appellant raises the same issue he raised in his motion to re-open concerning the application of *State v. Cabrales*, 118 Ohio St.3d 54, 2007-Ohio-1625, to his case. In considering an application for reconsideration, the proper standard for our review is whether the application "calls to the attention of the court an obvious error in its decision or raises an issue for our consideration that was either not considered at all or was not fully considered by us when it should have been." *Columbus v. Hodge* (1987), 37 Ohio App.3d 68, 523 N.E. 2d 515. The issue concerning merger of offenses was raised and fully considered by this Court on direct appeal based on the state of the law at that time. Appellant's claim is properly raised through his motion to re-open, alleging that counsel was ineffective for failing to alert this Court to the fact that *Cabrales* was pending before the Ohio Supreme Court.

*Exhibit 44* to *Return of Writ*.

The state appellate court also rejected Petitioner's claim, raised in his Rule 26(B) proceedings, that he was denied the effective assistance of appellate counsel:

> . . . [A]ppellant argues that counsel was ineffective for failing to argue that *Cabrales* would have affected appellant's claim that the charged offenses of securities violations and engaging in a pattern of corrupt activity were allied offenses of similar import, thereby improperly permitting this Court to rely on *State v. Rance*, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699.
>
> In *State v. Cabrales*, the Ohio Supreme Court acknowledged that the *Rance* test to determine whether separate criminal offenses were allied offenses of similar import had

31

produced "inconsistent, unreasonable, and, at times, absurd results." *Id*. at paragraph 20. The *Cabrales* court rejected a "strict textual comparison" of the elements of separate offenses, and clarified *Rance*:

"In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in commission of the other, then the offenses are allied offenses of similar import. (*State v. Rance* (1999), 85 Ohio St.3d 632 . . . .)."

We note that the decision in *Cabrales* was issued after our judgment on direct appeal. Appellant was sentenced in this case on December 18, 2006, to an aggregate term of incarceration of nineteen (19) years. He filed a direct appeal of his conviction and sentence to this Court on December 29, 2006. Our judgment affirming the conviction and sentence was filed on February 21, 2008. Appellant filed a notice of appeal with the Ohio Supreme Court on April 7, 2008. *Cabrales* was decided on April 9, 2008. Appellant's request for jurisdiction in the Ohio Supreme Court was denied on August 6, 2008.

In the application to re-open, appellant concedes that appellate counsel argued on direct appeal that the charged securities violations were allied offenses of similar import. Counsel further argued that several of the ninety-nine counts should be merged for the purposes of sentencing. However, appellant contends that counsel was ineffective in failing to (1) put this Court on notice that the Ohio Supreme Court had accepted jurisdiction in *Cabrales,* (2) anticipate the Supreme Court's ruling in *Cabrales,* and (3) move this Court to stay the direct appeal until the Supreme Court issued its decision in *Cabrales*.

Specifically, as previously stated, appellant argues that counsel's failure to address *Cabrales* caused this Court to rely improperly on *State v. Rance* in finding that the securities violations and engaging in a pattern of corrupt activity were not allied offenses of similar import. *State v. Fanaro, supra* at paragraph 26. We disagree.

"To establish ineffective assistance of counsel a petitioner must show that his attorney failed to exercise the customary skill and diligence of a reasonably competent attorney." *State v. Woodson*, Stark App. No. 2007-CA-0051, 2008-Ohio-3519. In this case, the viability of a challenge

pursuant to *Cabrales* was not established at the time of the direct appeal. Courts have held that an attorney cannot be found to have fallen below a standard of customary skill and diligence in failing to present what was, at the time, a speculative, rather than an established, challenge and for failing to anticipate developments in the law. . . . For these reasons, we do not find that counsel's performance was deficient in failing to address *Cabrales* on direct appeal.

Additionally, the doctrine of *res judicata* also prevents this court from reopening Fanaro's original appeal. Errors of law that were either previously raised or could have been raised through an appeal may be barred from further review vis-à-vis the doctrine of *res judicata*. *See, generally, State v. Perry* (1967), 10 Ohio St.2d 175, 226 N.E.2d 104. The Supreme Court of Ohio has also established that a claim of ineffective assistance of appellate counsel may be barred by the doctrine of *res judicata* unless circumstances render the application of the doctrine unjust. *State v. Murnahan* (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204.

In this case, appellant argued on direct appeal that the securities violations and the charge of engaging in a pattern of corrupt activity were allied offenses of similar import. On review, this Court applied the *Rance* test and found that the securities violations and the charge of engaging in a pattern of corrupt activity did not correspond to such a degree in the abstract that the commission of one crime will necessarily result in the commission of the other. *State v. Fanaro* at paragraph 26. As noted above, *Cabrales* clarified *Rance* and did not change the rule of law. Our opinion in *Fanaro* does not demonstrate that we applied *Rance* so as to require an exact alignment of the elements, as the Supreme Court cautioned against in *Cabrales*. Therefore, appellant is barred from seeking to re-open the original appeal on this issue pursuant to the doctrine of *res judicata*.

*Exhibit 38* to *Return of Writ*.

The factual findings of the state appellate court are presumed to

be correct:

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting

the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Further, this Court cannot grant habeas corpus relief unless the decision of the state court was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The United States Supreme Court has explained:

> "[A]n unreasonable application of federal law is different from an *incorrect* application of federal law." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Indeed, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.*, at 411, 120 S.Ct. 1495. Rather, that application must be "objectively unreasonable." *Id.*, at 409, 120 S.Ct. 1495. This distinction creates "a substantially higher threshold" for obtaining relief than de novo review. *Schriro v. Landrigan,* 550 U.S. 465, 473, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007). AEDPA thus imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n.7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti,* 537 U.S. 19, 24, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (*per curiam*).

*Renico v. Lett*, 559 U.S. 766, 130 S.Ct. 1855, 1862 (2010) (footnote omitted)(emphasis in original). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, ---U.S. ----, ----, 131 S.Ct. 770, 786 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). "'If this standard is difficult to meet' – and it is – 'that is because it was meant to be.'" *Burt v. Titlow*, -- U.S. --, 2013 WL 5904117, *4 (November 5, 2013)(quoting *Harrington*, at --, 131 S.Ct. at 786).[16]

The state appellate court held that counsel's invocation of *Cabrales* in Petitioner's direct appeal would not have changed the outcome of that appeal. His attorney, therefore, did not perform in a constitutionally ineffective manner by failing to alert the state appellate court to the pending decision in *Cabrales,* or by failing to request a stay pending that decision. Moreover, because the state appellate court actually considered the application of *Cabrales* to Petitioner's sentences, Petitioner was not prejudiced by his appellate counsel's failure to notify that court of the pendency of *Cabrales* in the Ohio Supreme Court. Petitioner's claim four is therefore without merit. *See Strickland*.

---

[16] Petitioner argues that the decision of the state appellate court, as it relates to the ineffective assistance of counsel claim addressed at the evidentiary hearing, is not entitled to the deference typically afforded the state courts under the Antiterrorism and Effective Death Penalty Act of 1996. *Petitioner's Reply to Respondent's Post Hearing Brief,* p. 17. The state appellate court, however, also addressed other claims and, as to those claims, the factual findings of the state appellate court are presumed to be correct and the decision of the state appellate court is entitled to deference under 28 U.S.C. § 2254(d).

**IV. Claim Five**

In a somewhat related argument, Petitioner contends in claim five that his convictions violate the Double Jeopardy Clause of the United States Constitution. In his traverse to the *Return of Writ*, Petitioner specifically argues that his sentences for false representation in the sale of securities, as charged in Counts 3, 8, 13, 18, 23, 28, 33, 38, 43, 48, 53, 58, 63, 76, 89, 98, and 131, should have been merged with his sentences for securities fraud, as charged in Counts 4, 9, 14, 19, 24, 29, 34, 39, 44, 49, 54, 59, 64, 77, 90, and 132.[17] *Petitioner's Reply/Traverse to Respondent's Answer/Return of Writ*, Doc. No. 15, *PageID* #1254. Petitioner also argues in the traverse that, because all the convictions involve the sale of securities, his separate convictions and separate sentences on all those charges violate *Cabrales* and the Double Jeopardy Clause. *Id.*, at *PageID* #1255-56. This Court disagrees.

The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. The Double Jeopardy Clause has been interpreted to protect persons from successive prosecutions for the same offense after acquittal or conviction, as well as from multiple punishments for the same offense. *Brown v. Ohio,* 432 U.S. 161, 165-66 (1977). The traditional test for double jeopardy claims is the "same elements" test articulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932) (requiring the

---

[17] The sentences on many of these counts were to be served concurrently. *Exhibit 8* to *Return of Writ*.

court to determine whether each charged offense "requires proof of an additional fact which the other does not"). The *Blockburger* test is designed to deal with the situation where closely connected conduct results in multiple charges under separate statutes. Under *Blockburger,* the critical question is whether the multiple charges in reality constitute the same offense. Thus, the *Blockburger* test focuses on whether the statutory elements of the two crimes charged are duplicative. If the elements of the two statutes are substantially the same, then to charge the defendant under both will violate the Double Jeopardy Clause.

The elements of the various counts of securities violations as charged in the 2006 indictment are not substantially the same. As discussed by the state appellate court, the charge of engaging in a pattern of corrupt activity under O.R.C. § 2923.32, contained in Count 134 of the 2006 indictment, requires proof that Petitioner engaged in a pattern of corrupt activity, *see* O.R.C. § 2923.32(A)(1), which is defined as

> two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.

O.R.C. § 2923.31(E). Ohio's statute is patterned after the federal RICO statute, 18 U.S.C. § 1961 *et seq.*, and, in applying the state statute, "Ohio courts look to federal case law applying RICO." *Clayton v. Warden, Corrections Medical Center,* No. 3:11-cv-266, 2013 WL 811450, at *11 (S.D. Ohio Mar. 5, 2013). The elements of an offense under this statute are different from those under O.R.C. §

1707.44(A)(1) (prohibiting the sale of securities without a license), O.R.C. § 1707.44(B)(4) (prohibiting false representations in the sale of securities), O.R.C. § 1707.44(C)(1) (prohibiting the sale of unregistered, non-exempt securities), and O.R.C. § 1707.44(G)(prohibiting fraud in connection with the sale of securities), because the statute requires two or more incidents of corrupt activity related to the affairs of the same enterprise. Significantly, in federal RICO prosecutions, consecutive sentences for both the RICO violation and the predicate underlying offenses do not violate the Double Jeopardy Clause. *United States v. Sutton*, 700 F.2d 1078 (6th Cir. 1983). Moreover, this Court defers to the conclusion of the state appellate court that the Ohio legislature intended cumulative punishments for the violation of these statutes. *See also Clayton*, 2013 WL 811450, at *15 (reaching same conclusion); *Cody v. Jeffreys,* No. 2:10-cv-974, 2013 WL 170268, at *7-8 (S.D. Ohio Jan. 16, 2013) (no Double Jeopardy violation where Ohio courts have interpreted their own statutes to permit cumulative punishment for a single act).

> The Supreme Court has interpreted the multiple-punishments aspect of the Double Jeopardy Clause as protecting defendants from being punished more than once for a single act when the legislature does not intend for the punishments to be cumulative. *See Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). In other words, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter,* 459 U.S. 359, 366, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983); *see White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009) ("The current jurisprudence allows for multiple punishment for the same offense provided the legislature has clearly indicated its intent

to so provide, and recognizes no exception for necessarily included, or overlapping offenses."). When two different statutory provisions authorize punishment for the same act, "[t]he first step is to determine whether [the legislature] intended to punish cumulatively the same conduct which violates two statutes." *United States v. Johnson*, 22 F.3d 106, 107-08 (6th Cir. 1994)*; see Ohio v. Johnson,* 467 U.S. 493, 499, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) ("[T]he question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent.").

. . .

Moreover, "[w]hen assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes." *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) (citing *Hunter*, 459 U.S. at 368, 103 S.Ct. 673*; O'Brien v. Skinner*, 414 U.S. 524, 531, 94 S.Ct. 740, 38 L.Ed.2d 702 (1974)). "Under the [D]ouble [J]eopardy [C]lause, when evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's determination of the legislature's intent." *Id.* (citations omitted). "Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination." *Id.; see Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407 (2005) (*per curiam*) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."); *Jones v. Sussex I State Prison*, 591 F.3d 707, 710 (4th Cir. 2010) ("[W]hen the charged offenses violate state law, the double jeopardy analysis hinges entirely on the state-law question of what quantum of punishment the state legislature intended. Once a state court has answered that state-law question, there is no separate federal constitutional standard requiring that certain actions be defined as single or as multiple crimes." (internal citation and alteration omitted)).

*Volpe v. Trim*, 708 F.3d 688, 696-97 (6th Cir. 2013) (footnote omitted).

The state court held that Petitioner's convictions and separate sentences on the separate securities counts and on the charge of engaging in a pattern of corrupt activity were not improper and did not violate state law.  It follows, then, that Petitioner's separate sentences on those charges did not violate the Double Jeopardy Clause. *See Volpe*.  Particularly is this true in light of the fact that Ohio's statute on allied offenses of similar import, O.R.C.. § 2941.25, is intended to codify the protections of the Double Jeopardy Clause. *State v. Underwood*, 124 Ohio St. 3d 365, 370 (2010).

In short, claim five is without merit.

## V.   Claim Six

In claim six, Petitioner alleges that, in sentencing him, the trial court engaged in impermissible fact finding in violation of *Blakely v. Washington*, 542 U.S. 296, and the Sixth Amendment. *Petition*, *PageID* #33-35.  The state appellate court rejected this claim as follows:

> Under the Ohio law, and in accordance with the *Foster* decision, the trial court is vested with discretion to impose a prison term within an applicable statutory range. *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1.  However, in exercising its discretion the court remains guided by the legislation designed to establish uniformity, and must "carefully consider the statutes that apply to every felony case [including] R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender [and] statutes that are specific to the case itself." *State v. Mathis*, 109 Ohio St.3d at 62.FN3  The fact that the trial judge explained his reasons for imposing a particular sentence, on the record, cannot transform a sentence within the range provided by statute

into a constitutionally infirm sentence on the grounds that the statements constitute impermissible 'judicial fact-finding.'" *State v. Goggans*, Delaware App. No.2006-CA-07-0051, 2007-Ohio-1433, at paragraph 29.

FN3. For example, guided by the overriding purposes of felony sentencing the court can sentence in order to "protect the public from future crime by the offender" and "to punish the offender." R.C. 2929.11(A). The court can also consider, *inter alia*, whether the victim suffered serious psychological and economic harm as a result of the offense, whether the offenders' occupation or profession obliged the offender to prevent the offense, and whether the offender's relationship with the victim facilitated the offense. R.C. 2929.12(B).

In this case, the applicable statutory sentencing ranges are as follows: for a first degree felony the court may impose a three, four, five, six, seven, eight, nine or ten year sentence. For a third degree felony the court may impose a one, two, three, four or five year sentence; and, for a fifth degree felony the court may impose a six, seven, eight, nine, ten, eleven, or twelve month sentence. Furthermore, "if an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively." *State v. Foster*, 109 Ohio St.3d at 31.

Prior to the imposition of sentence the trial court informed the parties that the maximum possible sentence which could be imposed by the trial court was 377 years. The trial court further stated, "the court has considered the purposes and principles of sentences set out under Section 2929.11 of the Ohio Revised Code, as well as the seriousness and recidivism factors set out under Section 2929.12." *Transcript of sentencing proceeding* at pages 33 and 34, hereinafter T.S. at ----). The trial court found that the evidence established that the appellant victimized older, retired, financially unsophisticated people whom he groomed with personal charm to invest their small life savings in risky, long term, securities. The court further found that appellant's activities had a vast effect on the victims' emotional and financial security. T.S. 33-38. The trial court then proceeded to impose a minimum six month sentence on each of the thirty-two third degree felonies and a minimum one year sentence on three, third degree felonies, to run consecutively to each other, and concurrently to all other counts, for an aggregate nineteen (19) year sentence.

We note that appellant discusses an alleged disparity between appellant's sentence and the sentence imposed for a

> co-conspirator. We decline to consider these arguments as
> they involve matters outside the record in this case.
> However, we find that the record establishes that the
> appellant did not receive the possible maximum consecutive
> sentence of 377 years, and that the sentence imposed was
> not only the minimum for each charged count within the
> statutory ranges, but, was also in compliance with *Foster*.
> Furthermore, pursuant to *Goggans* we do not find that the
> statements made by the trial court transform the sentence
> into a constitutionally infirm sentence on the grounds that
> the statements constitute impermissible judicial fact
> finding.

*State v. Fanaro*, 2008 WL 555448, at *1-3. Again, the findings of the

state appellate court are presumed to be correct under 28 U.S.C. §

2254(e), and habeas corpus relief is warranted only where the state

court's decision contravened or involved an unreasonable application

of federal law, as determined by the United States Supreme Court, or

resulted in a decision that was based on an unreasonable determination

of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

Such are not the circumstances here.

In *Blakely,* 542 U.S. at 296, the United States Supreme Court held

that a judge's fact finding cannot form the basis of a sentence

enhancement that imposes a term greater than the maximum sentence for

the underlying crime:

> [T]he relevant "statutory maximum" is not the maximum
> sentence a judge may impose after finding additional facts,
> but the maximum he may impose *without* any additional
> findings. When a judge inflicts punishment that the jury's
> verdict alone does not allow, the jury has not found all
> the facts "which the law makes essential to the
> punishment," and the judge exceeds his proper authority.

*Id*. at 303-04 (citation omitted). After *Blakely,* the Ohio Supreme

Court excised the fact finding provisions of Ohio's sentencing

statutes, but held that "trial courts have full discretion to impose a

prison sentence within the statutory range and are no longer required

to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Foster*, 109 Ohio St.3d at 30. Subsequently, the United States Supreme Court held that the Sixth Amendment does not preclude judges from making factual findings prior to the imposition of consecutive sentences. *Oregon v. Ice*, 555 U.S. 160, 163-64 (2009).

Nothing in the record supports any suggestion that the trial judge violated *Blakely* or the Sixth Amendment when it imposed consecutive sentences within the statutory range for the offenses upon which Petitioner was convicted. Petitioner misconstrues the holding of *Apprendi v. New Jersey*, 530 U.S. 466, when he argues, *see Petition*, *PageID* #33-34, that the Sixth Amendment forbids a sentencing judge from considering facts brought out during a jury trial or the effect of the crimes on the victims. The sentences imposed in this case did not exceed the statutory maximums and the trial judge was not constitutionally prohibited from articulating the reasons for those sentences.

Claim six is without merit.

For the foregoing reasons, it is **RECOMMENDED** that the petition for a writ of habeas corpus be **DISMISSED**.

## VI.  Procedure for Objections

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28

U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

                                        s/Norah McCann King_____
                                           Norah McCann King
                                     United States Magistrate Judge

November 22, 2013